487 F.2d 161
 1973-2 Trade Cases 74,761
 LINDY BROS. BUILDERS, INC. OF PHILA. et al.
v.
AMERICAN RADIATOR & STANDARD SANITARY CORP. et al.
Friendswood Development Company and Humble Oil & Refining
Company, claimants, Appellants in No. 72-1647,
The Weitz Company, Inc., et al., Appellants in No. 72-1648.
 Nos. 72-1647, 72-1648.
 United States Court of Appeals,
Third Circuit.
 Argued May 4, 1973.
Decided Oct. 31, 1973.
 
 Harold E. Kohn, Aaron M. Fine, Harold E. Kohn, P. A., David Berger, H. Laddie Montague, Jr., David Berger, P. A., Philadelphia, Pa., for appellees.
 William Simon, G. Joseph King, Howrey, Simon, Baker & Murchison, Washington, D. C., for appellants in No. 72-1647.
 Donald A. Wine, C. Carleton Frederici, Alan H. Kirshen, Des Moines, Iowa, for appellants in No. 72-1648; Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, of counsel.
 Before SEITZ, Chief Judge, WEIS, Circuit Judge and SCALERA, District Judge.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 These appeals concern the award of attorneys' fees following the settlement of a class action. Two members of the class here involved, Friendswood Development Company and Humble Oil and Refining Company, appeal from the award of fees to attorneys Kohn and Berger and members of their law firms. Also before us is an appeal by attorneys of the firm of Thoma, Schoenthal, Davis, Hockenberg and Wine, who were denied fees. Kohn and Berger are attorneys for Lindy Bros. Builders and the Philadelphia Housing Authority, appellees in both appeals.[1] We will deal first with the appeal of Friendswood and Humble.
 
 
 2
 Following the indictment of plumbing fixture manufacturers and their trade association for price-fixing violations of the antitrust laws, numerous civil suits were filed on behalf of several classes of plaintiffs seeking treble damages. One such class action was filed by appellees on behalf of builders and owners shortly after the indictments were returned. The various class actions were consolidated for pretrial proceedings and transferred to the Eastern District of Pennsylvania. Several years of procedural maneuvering followed between plaintiffs and defendants, who wanted the civil suits stayed or enjoined pending resolution of the criminal actions. During the stay proceedings, in which the plaintiffs eventually prevailed, the criminal action proceeded, and on May 2, 1969, a jury verdict was returned against those defendants who had pleaded not guilty.[2] The schedule of depositions in the civil suit was filed in June 1969, and the taking of depositions was to have begun in the fall of 1969.
 
 
 3
 In October 1969, settlement negotiations were undertaken, primarily by attorneys Kohn and Berger and their firms. The first settlement agreement involving the builder-owner class was reached early in 1970. As a result of the settlement agreement a single fund was created to satisfy the claims of all builder-owners, those who had not filed suit ("unrepresented" claimants) as well as those who had.[3] The district court gave preliminary approval to the settlement plan in May 1971, after the Supreme Court denied defendants' petition for certiorari to review this Court's affirmance of the criminal convictions. In its order preliminarily approving the settlement the district court appointed appellees as Class Representatives. The settlement was given final approval by the district court in April 1972.
 
 
 4
 At the time the district court gave final approval to the settlement, numerous attorneys petitioned for award of fees.[4] Among these was a petition by Kohn and Berger as attorneys for the Class Representatives. Kohn and Berger had private fee agreements with the appellees and also with many other builder-owners who made claims against the fund. In their fee petition, Kohn and Berger asked for an award to be given to them directly in addition to the amounts to be received pursuant to contracts with individual claimants. For purposes of their petition, Kohn and Berger divided the class into four categories. The first category was composed of claimants who had contractual fee arrangements with Kohn and Berger. Kohn and Berger were to receive over $800,000 from these claimants. The second category included claimants who had filed suit and whose attorneys Kohn and Berger felt had contributed to the creation of the settlement fund. Kohn and Berger were to receive no fees from these claimants and sought none. Other claimants who had joined in the suits but whose attorneys Kohn and Berger concluded had not contributed to the creation of the settlement fund comprised the third category. From these claimants, who had contracted to pay varying fees to other attorneys, Kohn and Berger sought a fee award equal to one-sixth of the claimants' share of the settlement fund.[5] The final category was made up of builder-owners who filed claims against the fund, but who had not joined in the suit and, therefore, had not contracted with any attorney participating in the settlement negotiations or other related proceedings. Kohn and Berger asked the court to award them one-third of the amounts to be recovered by these last claimants.[6] The petition was opposed by unrepresented claimants Friendswood Development Company and Humble Oil and Refining Company.
 
 
 5
 The district court, 341 F.Supp. 1077, denied Kohn and Berger's petition for fees from the third category of claimants and granted fees from the last category equal to 20% of the amount of the fund apportioned to the unrepresented claimants. Kohn and Berger have not appealed the denial of fees from claimants in category three nor the award of fees from unrepresented claimants in an amount less than requested.
 
 
 6
 Friendswood and Humble appeal from the award of fees out of the settlement apportioned to them and other unrepresented claimants.
 
 Basis for Fee Awards
 
 7
 The first contention advanced by Friendswood and Humble is that the court below lacked authority to award any fees to Kohn and Berger. We assume that appellants are correct in stating that Section 4 of the Clayton Act, 15 U.S.C. Sec. 15 (1970), does not authorize award of attorneys' fees to a plaintiff who has settled his antitrust action, rather than pursue it to successful judgment. Cf. Milgram v. Loew's, Inc., 192 F.2d 579 (3d Cir. 1951), cert. denied, 343 U.S. 929, 72 S.Ct. 762, 96 L.Ed. 1339 (1952); Decorative Stone Co. v. Building Trades Council, 23 F.2d 426 (2d Cir.), cert. denied, 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005 (1928). There is, however, authority for the award of fees under the general equitable powers of the court. E. g., Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882). These equitable powers may, under the equitable fund doctrine, be used to compensate individuals whose actions in commencing, pursuing or settling litigation, even if taken solely in their own name and for their own interest, benefit a class of persons not participating in the litigation. See Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).
 
 
 8
 Appellants Friendswood and Humble concede that the equitable fund doctrine may provide a basis for award of attorneys' fees in the instant case. They contend, however, that the application for fees should be made by the client or clients who were parties to the action and not the attorneys who prosecuted the action or negotiated the settlement. Clearly, fees may be awarded on the attorney's petition. Central Railroad & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). The thrust of appellants' contention here is more that, regardless of which person files the petition, the right to compensation is in the client rather than the attorney. We think that appellants misconceive the basis for award of attorney fees.
 
 
 9
 The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed. Understood in this way, there are two possible "causes of action" that may be urged as the basis for award of attorneys' fees. One of these "causes" belongs to the plaintiff who brought the underlying suit. His claim is that by instituting the suit he has performed a service benefiting other class members. The reasonable value of that service is measured by the expenses incurred by the plaintiff on behalf of the class. Trustees v. Greenough, supra, the seminal case in establishing the equitable fund doctrine, involved this type of claim for attorneys' fees. There a bondholder brought suit on behalf of himself and other bondholders to prevent the trustees of a fund that secured the bonds from committing waste. The judgment for the plaintiff set aside fraudulent conveyances and restored the fund. Relying principally on English cases requiring a trust fund to pay for the costs of its own administration, the Supreme Court affirmed the award to plaintiff of attorneys' fees and other reasonable expenses incurred in the litigation. The Court's decision made clear that the plaintiff must bear his proportionate share of expenses, id., 105 U.S. at 537-538, 26 L.Ed. 1157, and other class members must likewise bear their share of the litigation's expense. Id. at 532-537, 26 L.Ed. 1157.
 
 
 10
 The second "cause of action" for award of attorneys' fees under the equitable fund doctrine belongs to the attorney. The attorney's claim is that his conduct of the suit conferred a benefit on all the class members, that one or more class members has agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them. This claim was presented to the Supreme Court in Central Railroad & Banking Co. v. Pettus, supra, 113 U.S. at 120-121, 5 S.Ct. 387, 28 L.Ed. 915, three years after the Greenough decision. In Pettus, the Court upheld the award of fees directly to attorneys who had conducted a class action resulting in the establishment of a fund from which numerous creditors of the defendant railroad could be paid.[7] The attorneys had contracted with the complainant and, during the course of the litigation, with certain other creditors for payment of contingent fees from those creditors' shares of the recovery. The Court found that the attorneys were entitled to the reasonable value of the services they rendered to the class members with whom the attorneys had not contracted. Id. at 127, 5 S.Ct. 387, 28 L.Ed. 915.
 
 
 11
 We recognize the close relation between the equitable claims for attorneys' fees that clients and attorneys, respectively, may advance. An attorney's claim for the value of his services to unrepresented class members may be subsumed, fully or partially, in the "expenses" claim of the attorney's client who had paid more than his share of the value of the attorney's services to the class. We need not, however, decide now the manner in which courts should treat such overlapping claims by attorney and client. In this case, the only claims made were by attorneys. In passing upon the sums which represent the value of attorneys' services to unrepresented claimants, we do not intimate any view concerning the ability of these attorneys' private clients to require application against the attorneys' charges to them of all or part of the fees paid by unrepresented claimants.[8] We reject appellants' contention that there is no basis for the award of fees directly to the attorneys absent a finding that such award is necessitated by their clients' interests.
 
 Standards Governing Fee Awards
 
 12
 In awarding attorneys' fees, the district judge is empowered to exercise his informed discretion, and any successful challenge to his determination must show that the judge abused that discretion.[9] Tranberg v. Tranberg, 456 F.2d 173, 175 (3d Cir. 1972). Appellants contend that, by failing to observe appropriate standards and procedures, the judge below did abuse his discretion in awarding fees to Kohn and Berger.[10] Friendswood and Humble are correct in arguing that failure to adhere to proper standards and to follow appropriate procedures would constitute abuse of the district court's discretion to award attorneys' fees. We proceed, therefore, to an examination of appellants' claim that the standards applied below in awarding fees to Kohn and Berger were improper.
 
 
 13
 The district judge listed four factors that he considered in his award of fees to Kohn and Berger. These were: the percentage of a claimant's recovery awarded as attorneys' fees in other cases, the amount of the recovery from which fees were being awarded, the amount the attorneys received from their clients under private agreements, and the time spent by Kohn and Berger "in connection with this litigation." 341 F.Supp. 1077, 1089-1090 (E.D.Pa.1972). The court below elaborated on these considerations by noting that the percentage of a recovery awarded as attorneys' fees should decline as the amount of the recovery increased and that the time spent by the attorneys was not so important here as in most cases. The judge did not indicate why time was less important here, nor did he explain what use was made of his knowledge of Kohn and Berger's private fee agreements.
 
 
 14
 The mere listing of four factors for consideration by the court makes meaningful review difficult and gives little guidance to attorneys and claimants. In detailing the standards that should guide the award of fees to attorneys successfully concluding class suits, by judgment or settlement, we must start from the purpose of the award: to compensate the attorney for the reasonable value of services benefiting the unrepresented claimant. Before the value of the attorney's services can be determined, the district court must ascertain just what were those services. To this end the first inquiry of the court should be into the hours spent by the attorneys-how many hours were spent in what manner by which attorneys. It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney. But without some fairly definite information as to the hours devoted to various general activities, e. g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e. g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought.
 
 
 15
 Ascertaining, within appropriately specific categories, the time spent is only the first step the district court should follow in determining the proper attorneys' fees to be awarded. In light of the comments of the judge below, however, we wish to make clear its importance. In this case, partly as a result of the procedures employed by the district court, the only information furnished to the district judge regarding the time spent by Kohn, Berger and their associates was that they had spent "in excess of 6,000 hours in connection with this litigation." 341 F.Supp. at 1090. This information was insufficient to support the award of fees to Kohn and Berger.
 
 
 16
 After determining, as above, the services performed by the attorneys, the district court must attempt to value those services. In some cases it may be possible to identify the hours spent as having benefited the individual client, the unrepresented claimants, or both. Where this is feasible, the district judge may want to assess directly the value of the attorneys' services to the unrepresented claimants without first determining the overall value of the attorneys' services in the case. Here, it would seem artificial to segregate the attorneys' efforts into categories as aiding clients, unrepresented claimants or the entire class. A single fund was created after negotiations on behalf of all claimants. Absent some contrary showing, we presume that all the attorneys' time contributed to the recoveries of each claimant. Where all of an attorney's services benefit the whole class, it seems simplest to determine the value of his services to the class and then to assess the extent to which the unrepresented claimants benefited from these services as compared with the rest of the class.
 
 
 17
 The value of an attorney's time generally is reflected in his normal billing rate. A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time-taking account of the attorney's legal reputation and status (partner, associate). Where several attorneys file a joint petition for fees, the court may find it necessary to use several different rates for the different attorneys. Similarly, the court may find that the reasonable rate of compensation differs for different activities.
 
 
 18
 Finding the reasonable hourly rate for each attorney does not end the court's inquiry into the value of the attorney's services. The court cannot properly fix attorneys' fees merely by multiplying the hourly rate for each attorney times the number of hours he worked on the case. Before discussing the other factors to be considered in fixing fees, we stress, however, the importance of deciding, in each case, the amount to which attorneys would be entitled on the basis of an hourly rate of compensation applied to the hours worked. This figure provides the only reasonably objective basis for valuing an attorney's services. As Judge Wyzanski observed a decade ago in a case similar to this:
 
 
 19
 No one expects a lawyer to give his services at bargain rates in a civil matter on behalf of a client who is not impecunious. No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended. Yet unless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and that there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation. Cherner v. Transitron Electronic Corp., 221 F.Supp. 55, 61 (D.Mass.1963).
 
 
 20
 While the amount thus found to constitute reasonable compensation should be the lodestar of the court's fee determination, there are at least two other factors that must be taken into account in computing the value of attorneys' services. The first of these is the contingent nature of success; this factor is of special significance where, as here, the attorney has no private agreement that guarantees payment even if no recovery is obtained.[11] In assessing the extent to which the attorneys' compensation should be increased to reflect the unlikelihood of success, the district court should consider any information that may help to establish the probability of success. The most important such information in a civil antitrust suit may be the progress of any criminal action brought against the defendants.[12] Here, the United States had obtained indictments against all the defendants before the civil suits were filed; the defendants who pleaded not guilty had been convicted before serious settlement negotiations were begun; and those convictions were affirmed before the court gave final approval to the settlement. The court may find that the contingency was so slight or the amount found to constitute reasonable compensation for the hours worked was so large a proportion of the total recovery that an increased allowance for the contingent nature of the fee would be minimal.
 
 
 21
 The second additional factor the district court must consider is the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled. In evaluating the quality of an attorney's work in a case, the district court should consider the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and the amount of the recovery obtained. This last factor may be the only means by which the quality of an attorney's performance can be judged where a suit is settled before any significant in-court proceedings. In making allowance for the quality of work, the court must keep in mind that the attorney will receive an otherwise reasonable compensation for his time under the figure arrived at from the hourly rate. Any increase or decrease in fees to adjust for the quality of work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good. If the district judge determines that particular work was of a typical quality, he should, in increasing or decreasing the fee, be cognizant of the amount of time devoted to that given activity. Further, in increasing or decreasing an attorney's compensation, the district judge should set forth as specifically as possible the facts that support his conclusion, particularly where, as in this case, the judge determining the fees to be awarded did not sit in the case throughout the entire proceeding. The value to be placed on these additional factors will, of course, vary from case to case. Often, however, their value will bear a reasonable relationship to the aggregate hourly compensation.
 
 
 22
 After determining the total reasonable value of an attorney's services in securing recovery of a fund for the class, the district court must determine what portion of the amount arrived at should be paid by the unrepresented claimants. Absent extraordinary circumstances, the unrepresented claimants should pay for the attorneys' services in proportion to their benefit from them-that is, the unrepresented claimants should pay a percentage of the reasonable value of the attorneys' services to the class equal to their percentage of the class' recovery. We reiterate that we are not here called upon to decide whether his private clients can require that all or part of the fees recovered by the attorney be applied against the fees charged those clients.
 
 Procedure-Requirement of a Hearing
 
 23
 Friendswood and Humble contend that the district judge erred in failing to grant the requested evidentiary hearing before awarding fees. Had the district court been guided by the proper standards for setting attorneys' fees, the necessity of an evidentiary hearing would have been apparent. In determining the amount of time spent by various attorneys on different activities, the standard billing rate appropriate for each attorney, the extent of the contingency, and the degree to which an attorney's efforts advanced the interests of claimants from whom he seeks fees, the district judge must possess a great deal of information not presented below. Much of the evidence on which the judge will base his award or denial of fees may be disputed; the evidence presented by an attorney petitioning for fees may be incomplete. The denial of fees obviously harms the petitioning attorney. Just as obviously, award of attorneys' fees harms the unrepresented claimant by reducing his net recovery. These opposing interests should be afforded a hearing to provide an evidentiary basis for resolution of disputed factual matters and to allow the parties to supplement possibly incomplete statements of opposing parties.
 
 
 24
 Courts have noted that expert testimony is not necessary to establish the value of a lawyer's services and have, on that ground, sanctioned the award of attorneys' fees on the basis of affidavits without a hearing. E. g., Tranberg v. Tranberg, supra, 456 F.2d at 175. A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers. Although expert opinion evidence is not required in awarding attorneys' fees, where the facts to be weighed in light of the judge's expertise are disputed, an evidentiary hearing is required. See Thomas v. Honeybrook Mines, Inc., 428 F.2d 981, 988-989 (3d Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). The Supreme Court endorsed the view taken here in Perkins v. Standard Oil Co., 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), a case involving the award of attorneys' fees under Section 4 of the Clayton Act. The Court stated that "[t]he amount of the award for such services should, as a general rule, be fixed in the first instance by the District Court, after hearing evidence as to the extent and nature of the services rendered." Id. at 223, 90 S.Ct. at 1990.
 
 
 25
 We conclude that the failure of the district court to hold an evidentiary hearing and its failure to follow proper standards in awarding fees to attorneys Kohn and Berger were inconsistent with the sound exercise of discretion.
 
 The Thoma Petition
 
 26
 Of the attorneys whose petitions for fees were denied, only one group has appealed. These attorneys are members of the firm of Thoma, Schoenthal, Davis, Hockenberg and Wine (hereinafter "Thoma"). In denying the Thoma petition, which asked for $17,646, the district court did not hold an evidentiary hearing nor was it guided by the standards set forth above. We hold that the denial of the Thoma petition was inconsistent with the sound exercise of discretion.
 
 
 27
 The orders granting attorneys' fees to Kohn and Berger and denying fees to the Thoma attorneys are vacated and the matters remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 No question has been raised as to whether Lindy Bros. Builders and the Philadelphia Housing Authority are the proper appellees. We note that attorneys Kohn and Berger filed a petition for fees in their own name and no request for contribution was made on behalf of the named appellees. See discussion of the nature of equitable claims for attorneys' fees, infra pp. 164-165
 
 
 [2]
 Many of the defendants had pleaded nolo contendere, but several had pleaded not guilty, including some of the larger corporate defendants
 
 
 [3]
 At the time the court below ruled on petitions for attorneys' fees, the fund plus interest amounted to approximately $26 million
 
 
 [4]
 Twelve petitions were filed; eleven were denied in toto
 
 
 [5]
 At the time of the district court ruling on the fee petitions, the fees sought by Kohn and Berger from this category of claimants amounted to $745,733
 
 
 [6]
 The fees Kohn and Berger asked of unrepresented claimants totalled nearly $2.3 million at the time of their fee petition, bringing the amount requested from the third and fourth categories to over $3 million
 
 
 [7]
 The "fund" in Pettus was a lien on the railroad property
 
 
 [8]
 Cf. Cherner v. Transitron Elec. Corp., 221 F.Supp. 55, 62-63 (D.Mass.1963)
 
 
 [9]
 Appellants-attorneys of the Thoma group have argued that we should apply a broader standard of review here because the district judge was not sitting in the initial pretrial proceeding. We reject this contention. Although the district judge should be particularly diligent in setting forth specifically the facts that support his conclusion where he did not sit throughout the entire proceedings, the standard of review to be applied by the appellate court remains the abuse of discretion standard
 
 
 [10]
 Appellants also claim that even if the district judge did observe the proper standards and procedures, he abused his discretion in awarding an excessive fee to Kohn and Berger. In light of our conclusions as to the appropriate standards and procedures, we do not find it necessary to decide this issue
 
 
 [11]
 All private agreements here were for contingent fees
 
 
 [12]
 The threshold issue in antitrust cases is the defendant's violation of the antitrust laws. If the defendant in a criminal antitrust action is convicted after a plea of not guilty, the criminal conviction is prima facie evidence of violation of the antitrust laws. 15 U.S.C. Sec. 16 (1970). We recognize that convictions following pleas of nolo contendere are not entitled to the same evidentiary position as convictions following not guilty pleas and that even where violation of the antitrust laws is established, civil plaintiffs must prove that they were injured by the violation