**Sherman WHEELER**

v.

**GRACO TRUCKING CORPORATION, Teamsters Local Union # 312, General Teamsters, Chauffeurs, Helpers & Yardmen, Local # 470, Edward Conhaim,**

**Graco Trucking Corporation and Edward Conhaim, Appellants.**

**No. 91–2040.**

United States Court of Appeals, Third Circuit.

Argued Sept. 21, 1992.

Decided Jan. 22, 1993.

Sur Petition for Rehearing Feb. 18, 1993.

Martin R. Lentz and Gary D. Fry (argued) (Pelino & Lentz, P.C., of counsel), Philadelphia, PA, for appellants, Graco Trucking Corp. and Edward Conhaim.

Doris J. Dabrowski (argued), Philadelphia, PA, for appellee, Sherman Wheeler.

William A. Isokait, Associated Gen. Contractors of America, Washington, DC, for amicus curiae, Associated Gen. Contractors of America.

Terry R. Yellig, Robert D. Kurnick and Martin J. Crane, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for amicus curiae, Bldg. and Constr. Trades Dept., AFL–CIO.

Before: HUTCHINSON, ALITO, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from a district court decision holding that Graco Trucking Corporation (Graco) and a Graco officer were required to pay a former employee, Sherman Wheeler, the wages specified by the Federal–Aid Highway Act, 23 U.S.C. § 113(a) (1988), as well as liquidated damages, counsel fees, and expenses. We reverse, but we do not reach the question concerning the interpretation of the Federal–Aid Highway Act that was decided by the district court.

## I.

Kiewit Perini was the general contractor for the construction of portions of the Blue Route, a federally financed highway pro-

ject administered by the Pennsylvania Department of Transportation (PennDOT). The prime contract between Kiewit Perini and PennDOT required that all "mechanics and laborers employed or working upon the site of the work" be paid "at wage rates not less than those contained in the wage determination of the Secretary of Labor" that was attached to the contract. The prime contract further provided that these wage rates had to be paid "regardless of any contractual relationship which may be alleged to exist between the contractor or its subcontractors and such laborers and mechanics." The Secretary of Labor's wage determination attached to the contract provided that Class II heavy and highway truck drivers were to be paid a basic hourly rate of $14.30 plus $3.5225 in fringe benefits.

Graco was a subcontractor on the Blue Route project. Graco and Teamsters Local 312 entered into a collective bargaining agreement. This agreement provided that, "except as modified by the specific provisions" in the agreement, "[d]rivers on heavy and highway and building construction projects" were "to be covered by the rates and benefits" contained in another collective bargaining agreement known as the "Five County Agreement." The Graco–Local 312 collective bargaining agreement also provided, however, that the union, employer, and employees could agree to a lower wage rate on jobs for which the employer would be bidding against competitors not bound by "this Agreement." In addition, the Graco–Local 312 collective bargaining agreement contained mandatory grievance and arbitration procedures.

The Five County Agreement, to which the Graco–Local 312 collective bargaining agreement referred, provided for Class II truck drivers to be paid $14.30 per hour. Like the prime contract, this agreement prohibited an employer from entering into any conflicting bargaining agreement with its employees. The Five County Agreement also contained a provision permitting an employer and union to assent to special wage rates when the employer believed that there would be competition by contractors not bound by the terms of the Five County Agreement. In addition, the Five County Agreement contained mandatory grievance and arbitration procedures.

In 1988, Graco obtained authorization from Local 312 and its members to bid on a contract to transport materials from an off-site supplier, Corson's Quarry, to the Blue Route site at a special wage rate of $11.30 per hour.

Wheeler worked for Graco as a Class II dump truck driver from September 1988 until February 1990. He was paid $14.30 per hour for on-site work and $11.30 per hour for hauling between Corson's Quarry and the Blue Route site. In February 1990, Wheeler was discharged for chronic tardiness. Wheeler submitted a grievance concerning his termination but not his rate of pay.

Wheeler subsequently began this action, asserting federal jurisdiction under the Federal Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1988), the Fair Labor Standards Act, 29 U.S.C. § 217 (1988), and the general federal question statute, 28 U.S.C. § 1331 (1988). He also requested the court to exercise pendent jurisdiction with respect to his state-law claims. Count One of his complaint claimed that Graco had discharged him in violation of the collective bargaining agreement. Count Two asserted that Graco had not paid him at the rates required by the collective bargaining agreement. Count Three claimed that Local 312 had breached its duty of fair representation by failing to enforce the provisions of the collective bargaining agreement concerning discharge and wages and hours.[1] Count Four alleged that Graco had violated the Fair Labor Standards Act by underpaying him for overtime. Count Five claimed that Graco and a Graco officer had violated the Pennsylvania Wage Payment and Collection Law (WPCL), Pa.Stat.Ann. tit. 43, § 260.1 et seq. (1964 & Supp.1992), by failing to pay him the wages he was due.

---

1. Count Three also claimed that another union had breached its duty of fair representation, but the claim against this union was dismissed by stipulation before trial.

Graco moved for summary judgment contending, among other things, that Wheeler had never filed a grievance concerning his wages. The district court denied that motion, and the case was tried before a jury. During trial, however, the district court concluded that Wheeler's wage claim should not be presented to the jury because it presented purely legal questions. The jury was asked to decide two questions: (1) whether Wheeler's termination violated the collective bargaining agreement and (2) whether the union had violated its duty of fair representation. The jury answered both questions in the negative.

After the trial, the district court issued an opinion concerning Wheeler's wage claim. The district court first addressed the applicability of the Davis–Bacon Act, 40 U.S.C. § 276a, which requires certain federal construction contracts to stipulate that laborers and mechanics will be paid not less than the prevailing wages determined by the Secretary of Labor. Citing *Weber v. Heat Control Co.*, 728 F.2d 599 (3d Cir. 1984), the district court stated that no private right of action exists under the Davis–Bacon Act, but the court observed that Wheeler had sought to collect the Davis–Bacon wage rate by arguing (a) that this rate was incorporated into the prime contract and (b) that the Pennsylvania WCPL permitted him to sue to collect the wages due under that contract. The district court recognized that initially Wheeler had relied on the decision in *Building & Constr. Trades Dep't v. McLaughlin*, 747 F.Supp. 26 (D.D.C.1990), which held that the Davis–Bacon Act applied to off-site work, but the district court noted that this decision had recently been reversed. *See Building & Constr. Trades Dep't v. U.S. Dep't of Labor Wage Appeals Bd.*, 932 F.2d 985 (D.C.Cir.1991). Moreover, the district court expressed agreement with the District of Columbia Circuit's holding in that case that the Davis–Bacon Act does not apply to the transportation of materials or supplies to a work site but is instead limited to work directly on the site of the project. Stating that Wheeler "was not working on-site for the purposes of the Davis–Bacon Act while he transported material

from the quarry," the court concluded that Wheeler was not entitled to Davis–Bacon wages for this work.

The district court noted that Wheeler had "switched tactics" after the District of Columbia Circuit's decision and had placed his reliance on the Federal–Aid Highway Act instead of the Davis–Bacon Act. The district court found that the Federal–Aid Highway Act, unlike the Davis–Bacon Act, was not limited to on-site work. Consequently, it held that Wheeler was entitled to be paid at the Federal–Aid Highway Act rate of $14.30 per hour for hauling between Corson's Quarry and the Blue Route site. The district court further held that Graco was obligated to pay the same wage rate under the provisions of its collective bargaining agreement that incorporated portions of the Five County Agreement.

Graco and a Graco officer (hereinafter "Graco") appealed. Graco's brief and that submitted by its supporting amicus focus primarily on the question whether the Federal–Aid Highway Act applies to off-site work. Graco also contends, however, that Wheeler was barred from asserting a wage claim in federal court because he never filed a grievance concerning his entitlement to additional wages. The briefs submitted by Wheeler and his supporting amicus also address the scope of the Federal–Aid Highway Act but say nothing about Wheeler's failure to file a grievance concerning his wage claim. At oral argument, however, counsel for Wheeler contended that Wheeler could assert such a claim under the Pennsylvania WPCL without making use of the grievance and arbitration procedures set out in the collective bargaining agreement.

## II.

█ Before considering the merits of Wheeler's claim for additional wages pursuant to the Federal–Aid Highway Act, we must first determine whether Wheeler was entitled to assert such a claim despite his failure to file a grievance relating to this matter. We will address in turn whether Wheeler could achieve this result by (A) suing directly under the Federal–Aid High-

way Act, (B) suing under Section 301(a) of the LMRA, 29 U.S.C. § 185(a), to enforce provisions of the collective bargaining agreement that are said to incorporate the requirements of the Federal–Aid Highway Act, (C) suing under the Pennsylvania WPCL for enforcement of the collective bargaining agreement, or (D) suing under the Pennsylvania WPCL to enforce the prime contract between PennDOT and Kiewit Perini.

A. Wheeler has never attempted to assert a claim directly under the Federal–Aid Highway Act or argued that he was entitled to assert such a claim. Consequently, we do not consider any such claim to be before us.

B. We turn next to the question whether Wheeler could sue under Section 301(a) of the LMRA, 29 U.S.C. § 185(a), to collect the wages that he alleges are due under the collective bargaining agreement. The clear answer is that Wheeler could not assert such a claim because he failed to make use of the exclusive grievance and arbitration procedures set out in the collective bargaining agreement. As the Supreme Court observed in *Clayton v. UAW,* 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981), it is well established that "[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act...." *See also Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965).

Here, the collective bargaining agreement between Wheeler's union, Local 312, and his employer, Graco, contained exclusive grievance and arbitration procedures, but Wheeler did not attempt to make use of those with respect to his wage claim.

Therefore, Wheeler was barred from suing under Section 301(a) of the LMRA, 29 U.S.C. § 185(a), to collect the wages that he asserted were due.

■ C. We next consider whether Wheeler could sue under the Pennsylvania WPCL to enforce the provisions of the collective bargaining agreement without first attempting to utilize the grievance and arbitration procedures in that agreement. Wheeler has not cited any authority indicating that Pennsylvania law would allow him to bring such a suit without first filing a grievance, but we need not delve into this state-law question because federal labor law preempts any state-law claim for wages due under the collective bargaining agreement.

Wheeler does not dispute that Graco engaged in an industry affecting interstate commerce within the meaning of Section 301(a), 29 U.S.C. § 185(a). Accordingly, the interpretation of Graco's collective bargaining agreement with Local 312 is governed by federal law. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). Moreover, as the Supreme Court held in *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102–06, 82 S.Ct. 571, 576–78, 7 L.Ed.2d 593 (1962), federal labor law preempts state-law claims for breach of a collective bargaining agreement covered by the LMRA. In *Lucas Flour,* an employer subject to the LMRA asserted a state-law claim against a union for breach of a collective bargaining agreement. The Supreme Court held that the state-law claim was preempted and stated that "in a case such as this, incompatible doctrines of local law must give way to principles of federal labor law." *Id.* at 102, 82 S.Ct. at 576 (footnote omitted). Stressing the need for a single, comprehensive, and uniform body of federal law to govern labor-management relations, the Court wrote: "With due regard to the many factors which bear upon competing state and federal interests in this area ..., we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent

local rules." *Id.* at 104, 82 S.Ct. at 577. Thus, it has been settled since *Lucas Flour* that a state-law claim for breach of a collective bargaining agreement subject to the LMRA is preempted by federal labor law.

Indeed, the Supreme Court has subsequently held that the preemptive reach of Section 301 of the LMRA encompasses not only state-law claims that are directly based on a collective bargaining agreement but also all those that are "substantially dependent upon analysis of the terms" of the agreement. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). In that case, the Wisconsin Supreme Court had held that an employee could sue his employer in tort under state law for the bad-faith handling of a claim that the employee had submitted under a disability plan included in the collective bargaining agreement between the employer and the employee's union. Moreover, the Wisconsin Supreme Court had stated that the employee was not required to exhaust the exclusive grievance and arbitration procedures contained in the collective bargaining agreement before filing his tort suit. The Supreme Court of the United States reversed. Holding that the state-law tort claim was preempted by Section 301 of the LMRA, the Court wrote that "[p]erhaps the most harmful aspect of the Wisconsin decision" was that it allowed what was essentially a claim for breach of the collective bargaining agreement "to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement." *Id.* at 219, 105 S.Ct. at 1915. The Court stated (*id.* at 220, 105 S.Ct. at 1915–16):

A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness ..., as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

Applying these Supreme Court decisions, the Seventh Circuit, in *National Metalcrafters, Div. of Keystone v. McNeil,* 784 F.2d 817 (7th Cir.1986), held that federal labor law preempted an employee's claim under the Illinois Wage Payment and Collection Act, Ill.Rev.Stat. ch. 48, ¶¶ 39m–1 *et seq.* (1979), for vacation benefits allegedly due under the terms of a collective bargaining agreement. Similarly, in *Nicholas v. St. Agnes Medical Ctr.,* No. Civ. A. 84–5882, 1987 WL 5248, 1987 U.S.Dist. LEXIS 55 (E.D.Pa. Jan. 8, 1987), the district court held that federal labor law preempted a claim under the Pennsylvania Wage Payment and Collection Law for monies allegedly due under a collective bargaining agreement.

■ In accordance with these authorities, we hold that Wheeler's state-law claim for wages allegedly due under the collective bargaining agreement was preempted. Wheeler's claim is based squarely on the terms of the collective bargaining agreement and therefore is governed exclusively by federal law. Wheeler was entitled to assert his claim under Section 301(a) of the LMRA, but as previously noted, he was first required to attempt to make use of the exclusive grievance and arbitration procedures contained in the collective bargaining agreement.[2]

---

2. We do not believe that a statement in a footnote in *Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.,* 727 F.2d 279 (3d Cir.1983), dictates a contrary result. In that case, the district court held that a health and welfare fund was entitled to recover delinquent fringe benefit contributions pursuant to the LMRA and the WPCL from Kenneth and Linda Ambrose, who were the sole officers and majority shareholders of the corporation, Ambrose Inc., that signed the collective bargaining agreement requiring the payments. Among other things, the court held that the Ambroses fell within the WPCL's expansive definition of an

"employer." The Ambroses then took a premature appeal. In our opinion holding that the appeal had to be dismissed, we noted that the Ambroses had argued for the first time on appeal that the WPCL was preempted. We wrote: "Because it is jurisdictional, the district court may want to decide the preemption issue and, if there is federal preemption, consider whether the Pennsylvania Wage Payment and Collection Law can be subsumed within the federal common law of § 301." *Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.,* 665 F.2d 466, 470 (3d Cir.1981).

**114**

D. We come finally to the question whether Wheeler could sue under the Pennsylvania WPCL to enforce the prime contract between PennDOT and Kiewit Perini. The district court, as previously noted, held that Wheeler could maintain such a suit. Neither the district court nor the parties have cited any authority bearing on the right of an employee to maintain such an action, but we find it unnecessary to decide this question. Assuming solely for the sake of argument that Wheeler could bring such a suit, we hold that the plain language of the prime contract defeats his claim for wages at the Davis–Bacon or Federal–Aid Highway Act rate for work performed off the construction site. The prime contract states unequivocally that "[a]ll mechanics and laborers employed or working *upon the site of the work*" must be paid at wages not less than those specified in the attached wage determination of the Secretary of Labor (emphasis added). As the district court observed, Wheeler was not working on-site when he transported materials from the quarry to the construction project. Consequently, the minimum wage provision of the prime contract did not apply to this work.

The judgment of the district court will therefore be reversed.

Present: SLOVITER, Chief Judge, and BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and SEITZ,* Circuit Judges.

On remand, the district court held that the WPCL's definition of an "employer" applied either because it was incorporated into federal common law or was not preempted, but the court's opinion did not elaborate on the preemption issue.

In a second appeal, the Ambroses contended that the relevant provisions of the WPCL were preempted by Section 301(a) of the LMRA. In response, the fund agreed that federal law governed, but it contended that the district court had properly incorporated the substance of the relevant provisions of the WPCL into federal common law. Brief for Cross–Appellees/Appellants at 33–37. We affirmed the district court's holding that the Ambroses were liable under the WPCL but reversed the district court's decision finding the Ambroses liable under the LMRA.

SUR PETITION FOR REHEARING

Feb. 18, 1993.

The petition for rehearing filed by appellee in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the Court in banc, the petition for rehearing is denied.

In a footnote, we stated without further explanation that the Ambroses' contention that the WPCL was preempted by the LMRA was "without merit." *Carpenters Health & Welfare Fund,* 727 F.2d at 282 n. 5.

In light of the background noted above, we think the statement in the *Ambrose* footnote is best understood to mean that the WPCL's definition of an employer was, as our prior opinion put it, "subsumed within the federal common law." 665 F.2d at 470. Accordingly, the footnote is consistent with our holding in this case that federal labor law governs Wheeler's claim that the collective bargaining agreement was breached.

