393 A.2d 629

**ESTATE of Mike TOSE, Deceased.**

**Appeal of Andrea TOSE.**

Supreme Court of Pennsylvania.

Argued June 27, 1975.

Decided March 23, 1978.

Reargument Denied Nov. 27, 1978.

Harold E. Kohn, Bayard M. Graf, Philadelphia, for appellant.

Desmond J. McTighe, Norristown, for appellees, Leonard H. Tose and Desmond J. McTighe, Executors of Est. of Mike Tose, Dec'd.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Andrea Tose, one of the 11 pecuniary legatees under the will of her father-in-law, Mike Tose, deceased, now appeals from a decree of the Orphans' Court Division of the Court of Common Pleas of Montgomery County entered August 23, 1974. The testator died on October 23, 1965, leaving a will under the terms of which he bequeathed One Hundred Sixty Thousand Dollars ($160,000) among 11 pecuniary legatees in varying amounts.[1] In addition, the testator specifically bequeathed his stock to his son, Leonard H. Tose. Leonard was named as co-executor along with Desmond J. McTighe, Esquire.

The first and final account filed by the executors on July 29, 1971, showed that all available assets other than the stock, which was the subject of testator's specific bequest, had been used to pay the Federal Estate and Pennsylvania Inheritance Taxes and other fees and expenses. Leonard Tose contributed Fifty Thousand Eight Hundred Thirty-four Dollars and Sixty-five Cents ($50,834.65) toward the payment of the Federal Estate taxes and the stock had been distributed to Leonard leaving nothing available for distribution to the pecuniary legatees. Andrea Tose, one of the pecuniary legatees, filed objections and supplemental objections to the account alleging that the State and Federal death taxes attributed to Leonard's specific legacy, the stock, should have been apportioned to it and paid by Leonard. She also contended that certain administrative expenses should have been similarly apportioned. The Auditing Judge in his adjudication of March 22, 1972, sustained the position of Ms. Tose with reference to the apportionment of the death taxes attributed to Leonard's specific bequest and thereby made available a fund of Thirty-eight Thousand One Hundred Sixty Dollars and Twenty-six Cents ($38,-160.26) for the partial satisfaction of the 11 pecuniary legacies. Exceptions were filed by the executors to the direction

1. The Will provided for appellant to receive a bequest of Twenty-five Thousand Dollars ($25,000).

to apportion and by Andrea Tose to the allowance of the executors' commission and the failure to direct the apportionment of certain administrative expenses. Both sets of exceptions were dismissed on January 26, 1973.[2]

The executors then filed a schedule of distribution as directed in the adjudication to which Andrea Tose filed objections. An Opinion Sur Objections to a Schedule of Distribution was filed on April 23, 1974, and thereafter exceptions were filed by Andrea Tose. On August 23, 1974, a final decree was entered dismissing the exceptions to the schedule and it is from that decree that this appeal has been taken.

Appellant has raised three arguments. First, it is contended that interest should be paid at a rate of three per cent (3%) per annum on the pecuniary legacies commencing one year from the date of the decedent's death. It is argued that this result is required by the Probate, Estates and Fiduciary Code. Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 3543(a) (1975).[3] Secondly, appellant contends that the interest paid on the delinquent estate and inheritance taxes should not have been apportioned to the pecuniary legacies. Specifically, it is argued that the account of the executors shows that they paid interest on the tax liability in the amount of Nine Thousand Eight Hundred

---

**2.** An appeal was taken to this Court by Andrea Tose from the final decree of January 26, 1973, which dismissed the exceptions and made final the Decree Nisi of March 22, 1972. That appeal was discontinued on October 31, 1973.

The amount of thirty-eight thousand one hundred sixty dollars and twenty-six cents ($38,160.26) does not reflect the Orphans' Court's *sua sponte* modification of the pecuniary legatees' tax liability (opinion of April 23, 1974), the result of which was to increase the fund available for these legatees to an amount somewhat in excess of fifty thousand dollars ($50,000). This increase, however, does not affect our disposition of the instant appeal.

**3.** Section 3543(a) provides in pertinent part:

(a) Pecuniary legacy.—A pecuniary legacy bequeathed in trust shall bear interest at the rate of 3% per annum from the death of the decedent until the payment of the legacy, and when not in trust shall bear interest at the rate of 3% per annum from one year after the death of the decedent until the payment of the legacy. 20 Pa.C.S.A. § 3543(a) (1975).

Eighty-one Dollars and Thirty-one Cents ($9,881.31) which was taken into account in charging the pecuniary legatees. It is asserted that the delay in payment of these tax obligations arose because of a dispute as to the value of the stock, which was the subject of the specific bequest, and therefore the pecuniary legatees should not have been held responsible for the interest that accrued. Thirdly, appellant charges that her counsel should have been paid out of the fund "created" for the benefit of all of the pecuniary legatees.

Appellee initially responded to the instant contentions by asserting that these claims should be dismissed because they were not raised in accordance with the rules of court. We find this argument persuasive only as to appellant's second claim. Rule 10, Section 6 of the Supreme Court Orphans' Court Rules, applicable at the time of the proceedings in the lower court, provided as follows:

> "Objections to an account . . . shall be made and filed . . . as local rules shall prescribe."

Montgomery County Orphans' Court Rule 70.1 stated:

> "Objections to accounts shall be in writing, numbered consecutively, signed by the objector or his attorney, and each objection shall
>
> (1) be specific as to description and amount
>
> (2) raise but one issue of law and fact, but if there are several objections to items included in or omitted from the account relating to the same issue, all such objections shall be included in the same objections; and
>
> (3) set forth briefly the reason or reasons in support thereof."

The first and final account was filed approximately five years and six months after the death of the testator and the account reflected the interest paid on the death taxes as having been apportioned against the fund out of which the pecuniary legatees would otherwise have been paid. Thus, in the objections to the account appellant had available to her the claim that the interest paid on the death taxes should not have been apportioned, as well as her objection, which she did raise, to the portion of the principal of these

taxes for which the specific bequest should have been held accountable.[4] Although appellant filed objections and supplemental objections and exceptions to the adjudication, this claim was raised for the first time in the objections to the unconfirmed schedule of distribution. Under the clear language of Montgomery County Orphans' Court Rule 73(c) it was clearly not permissible for the assertion of the claim at that belated stage. Local Rule 73(c) provided:

> Objections to unconfirmed schedules of distribution shall be filed with the clerk and may be filed not later than the tenth day after the schedule was filed. Such objections may raise questions relating only to the schedule itself, and *shall in no event raise questions which actually were or else could have been raised previously, by claims, or by objections to the account or exceptions to the adjudication.* (Emphasis added).

In the *Estate of McGrorey*, 474 Pa. 402, 378 A.2d 855 (1977), which arose also from Montgomery County, the appropriate objections were apparently properly filed to the account and ruled upon adversely in a *nisi* adjudication. Nevertheless, we held in that decision that the questions were waived and not reviewable on appeal because the party had failed to file exceptions as provided by the local rules.[5] The procedural irregularity here is more grievous than that in *McGrorey*, since here this objection was not filed and the Auditing Judge was not presented with the question prior to his confirmation of the account. We therefore hold that appellant's claim for interest paid on the delinquent Federal

4. The rules provided for further assertion of that contention by way of exception to an adjudication rejecting the objection. *See* Supreme Court Orphans' Court Rules, Section 7, Rule 1 and Montgomery County Orphans Court Rule 75.2. The latter rule provides:

> "An adjudication shall be confirmed absolutely as of course, unless written exceptions thereto are filed with the clerk within ten (10) days after the date of the filing of the adjudication. *However, such exceptions shall in no event raise questions which could have been but were not raised by objections to the account or by claims presented at the audit of the account.*" (Emphasis added).

5. As has been noted in the recitation of the procedural history, Andrea Tose did file exceptions to the adjudication but those exceptions did not touch upon this claim.

Estate and Pennsylvania Inheritances taxes has been waived and will not be considered here.

■ We must reject appellee's arguments of waiver as they pertain to appellant's remaining two claims. Each of these claims were dependent upon a final adjudication providing for a fund available for payment of the pecuniary bequests. It would have been ludicrous to claim interest on the legacies until there was a resolution of the question as to whether the legacies abated because of the absence of a fund to pay them. It would be equally absurd to claim contribution for counsel fees on a theory that new funds had been generated as a result of the litigation until the proceedings establishing the alleged new fund had become final. Both of these claims could not have ripened until the exceptions to the confirmation of the account had been resolved. Appellant properly initiated these claims by raising them at the first available opportunity by way of objections to the schedule of proposed distributions filed by the executors.

■ We now turn to the merits of appellant's argument that she was entitled to interest at the rate of three per cent (3%) per annum. In her brief appellant concentrates upon the fact that Section 3543(a) of the Probate, Estates and Fiduciaries Code, 20 Pa.S. 3543(a) and its predecessor, Section 753 of the Fiduciaries Act of 1949, 20 P.S. 320.753(a) made it mandatory that a pecuniary legacy, not in trust, shall bear interest from one year after the death of decedent until the payment of the legacy. She also cites *Smith Estate*, 13 Fiduc.Rep. 244, 30 D. & C.2d 1 (1962) where the court directed that the interest on pecuniary legacies shall be paid out of income. What appellant ignores is that the question is not her entitlement to interest but the existence of a fund out of which such payment could be made. As the learned court below properly noted, appellant's arguments are of no avail where all of the income is included in the balance for distribution, as was the case here, and still the legacies could not be paid in full. To achieve the result appellant seeks to obtain, it would be necessary either to surcharge the executors or to charge the specific legacy to

generate a fund out of which payment might be made. Appellant has failed to offer any authority for either course of action nor are we aware of any reason here for such a result.

In denying appellant's claim for counsel fees, the lower court relied upon this Court's decision in *Sowers Estate*, 383 Pa. 566, 119 A.2d 60 (1956). In *Sowers* this Court was confronted by an exceptant's claim for counsel fees to be awarded out of estate assets. In denying this claim, we stated:

> It is only in very exceptional cases that an exceptant to the account of an executor, administrator or trustee in the Orphans' Court will be allowed counsel fees out of the fund. The rule in such cases is that the exceptant must pay his own counsel fee.
>
> Where the fund is in the hands of the court and in no jeopardy, except from the possible mistake of the court in dealing with it, and an exceptant is merely protecting his own interest, he will not be allowed counsel fees, although through his efforts others may also be benefited.
>
> *Id.*, 383 Pa. at 572–73, 119 A.2d at 64, *citing Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp.*, 334 Pa. 107, 5 A.2d 890 (1939); *Harrison's Estate*, 221 Pa. 508, 70 A. 827 (1908).

Although considering itself bound by the rule in *Sowers*, the lower court in the instant case concluded that our decision in *Hempstead v. Meadville Theological School*, 286 Pa. 493, 134 A. 103 (1926), established a less rigid rule governing awards of counsel fees in equity actions and that if *Hempstead* were applied, counsel fees could properly be awarded in the instant case. The lower court suggested that we adopt *Hempstead* as being the better rule.

Initially we note that the *Hempstead* language seized upon by the lower court in the instant case was taken out of context. A full reading of *Hempstead* discloses no difference between the rule stated in *Sowers* and the rule actually applied by this Court in *Hempstead*. It must also be pointed out that *Hempstead* involved an adversary action between

minority and majority trustees, whereas the instant case involves litigation by a legatee against the executors of an estate. In *Hempstead*, dissenting trustees brought an equity action to restrain the trustees of an educational institution from transferring its assets and the management of its educational activities to an out-of-state corporation. Eventually, the dissenting trustees were partially successful in that an injunction was granted preventing the majority trustees from transferring the institution's assets to the out-of-state corporation. The dissenting trustees then included a claim for counsel fees; the lower court awarded the counsel fees. On appeal, after stating the general rule that each party to adversary litigation must pay his own counsel fees, this Court reversed the lower court's award of counsel fees.

A close scrutiny of the cases underpinning the *Hempstead* rule and an analysis of the holding in *Hempstead* convinces us that there is no probate rule-equity rule dichotomy as suggested by the lower court in the instant case. The Pennsylvania cases allowing awards of attorneys fees and relied upon by the Court in *Hempstead* in arriving at its formulation of the rule involved litigation which protected an estate or fund from fraud or illegal claims. *Id.*, 286 Pa. at 496, 134 A. at 103, *citing Weed's Estate*, 163 Pa. 595, 30 A. 272 (1894) (certain unsecured creditors of insolvent estate brought suit to set aside conveyance and judgments confessed by trustee in fraud of creditors); *Manderson's Appeal*, 113 Pa. 631, 6 A. 893 (1886) (attorney employed on behalf of trustee defended trust estate from certain illegal claims). This element of protection of the fund or estate from fraud was also present in the United States Supreme Court case of *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881), which was cited by the Court in *Hempstead* and relied upon by appellant in the instant appeal. Finally, the Court in *Hempstead* in reversing the lower court's award of attorney fees stated:

> It is clearly evident that the action of the [majority] trustees was prompted by the highest motives. . . .

There was no disruption, or attempted disruption, waste or embezzlement of the property or of the trust funds. . . . There is not the slightest allegation of proof of fraud. Even in those states where the payment of counsel fees have been authorized there was an element of dishonesty that amounted to fraud or actual fraud present in the disposition of the subject-matter of the litigation. *Hempstead v. Meadville Theological School, supra,* 286 Pa. at 500, 134 A. at 105.

The *Hempstead* Court then went on to characterize the purpose of the minority trustee's litigation:

"Its [the litigation's] effect was to control the managerial acts of the [majority] trustees. It was not to preserve property or a fund, and consequently under no stretch of our law could it be brought within the scope of the cases allowing counsel fees." *Id.,* 286 Pa. at 501, 134 A. at 105.

Thus, the denial of attorney fees in *Hempstead* turned at least in part upon the lack of fraud or illegality on the part of the majority trustees.[6]

██ With this analysis of *Hempstead* as background, it becomes clear that *Hempstead* and *Sowers* are reconcilable. The rule stated in *Sowers* suggests that where the fund before the court is "in jeopardy" and an interested party's litigation protects the fund from this jeopardy, counsel fees may be allowed to the litigant out of the fund. The *Hempstead* decision merely provides concrete examples of when a fund is "in jeopardy," *viz.,* when the fund is threatened by fraud or illegal claims. When *Sowers* and *Hempstead* are read in this light, it is clear that there is no legal basis upon which appellant in the instant case could be awarded counsel fees. The assets in this estate were not in jeopardy.

Appellant also contends that through her efforts a fund was "created" for partial satisfaction of the 11 pecuniary

---

6. The lack of a fund before the court was an alternative basis for the denial of counsel fees in *Hempstead v. Meadville Theological School,* 286 Pa. 493, 498, 134 A. 103, 104 (1926).

legacies. Appellant then implicitly attempts to take advantage of the language of *Hempstead* which indicates that where litigation has "raised" a fund for distribution or administration by a court, counsel fees may properly be awarded to the litigant. *Id.*, 286 Pa. at 495, 134 A. at 103. In so arguing, appellant would have us adopt a broader interpretation of this *Hempstead* language than we think is warranted by our case law.

Those few cases which have allowed counsel fees under this theory involve situations where due to one litigant's efforts a fund was brought before a court or a fund already before the court was augmented by new assets. *Miller v. Meyers*, 300 Pa. 192, 150 A. 588 (1930); *Weed's Estate, supra.* In *Sowers*, we observed:

> The Court below correctly refused to allow counsel fees to be paid out of the trust to counsel for the exceptants. No new assets or additional funds were created by the filing of exceptions to the executors' or trustees' account. All of the assets of the estate were included in the Fiduciary Account and the only question was whether they should be retained as part of the trust or distributed, and if so, how.

*Sowers Estate, supra*, 383 Pa., at 572, 119 A.2d at 63. In the instant case, although due to appellant's efforts the Tose estate was reapportioned so as to allow partial payment of the pecuniary legacies, appellant did not bring new assets before the court for distribution. Thus we cannot find that appellant "raised" or "created" a fund for distribution. Counsel fees were properly denied appellant by the Orphans' Court.

The decree of the Orphans' Court Division of the Court of Common Pleas of Montgomery County is affirmed. Each party to pay own costs.

JONES, former C. J., did not participate in the decision of this case.