515 A.2d 855

**Carol JONES, et al., Appellees,**

v.

**William MUIR, Acting Insurance Commissioner of the Commonwealth of Pennsylvania, et al., Appellants.**

Supreme Court of Pennsylvania.

Argued May 15, 1986.

Decided Sept. 25, 1986.

Michael L. Harvey, Harrisburg, for appellants.

Robert E.J. Curran, William J. Winning, Media, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal from an order of the Commonwealth Court awarding counsel fees and expenses to the law firm which represented appellee, Carol Jones, in a suit commenced by her in Commonwealth Court. The subject of the suit involved the establishment of the Catastrophic Loss Trust Fund (CAT Fund).

On February 12, 1984, the General Assembly enacted the Motor Vehicle Financial Responsibility Law.[1] In part the Act established the CAT Fund, which was designed to provide certain benefits to Commonwealth residents for medical treatment and rehabilitative services for injuries arising out of the maintenance or use of a motor vehicle in the United States or Canada. *See* 75 Pa.C.S. §§ 1761–1769. The CAT Fund was to be funded by levying an initial charge of $5 upon motor vehicles registered in the Commonwealth. 75 Pa.C.S. § 1762. The Act directed that this charge was to be remitted to an agent designated by the Insurance Department, who in turn would remit the charge to the Insurance Department for deposit in the trust fund. *Id.* To enforce payment the Act directed PennDOT to refuse registration, renewal, or transfer of registration of any motor vehicle to which the charge attached until there was proof that the charge had been paid. 75 Pa.C.S. § 1763. The effective date of the Act was October 1, 1984.

Pursuant to the Act's direction to appoint a party to collect the $5 charge, the Insurance Department promulgated proposed regulations which designated individual insurance companies to collect the charge from their automobile policyholders. The Department's rationale for this procedure was to create a mechanism to match the roster of persons having purchased automobile insurance and paid the CAT Fund charge, against the roster of automobile registrants, and thereby discover both uninsured motorists and those failing to pay the CAT Fund charge. The regulations were presented to the Independent Regulatory Review Commission (IRRC)[2] on August 2, 1984. In a 5–0 vote the

---

1. Act of Feb. 12, 1984, P.L. 26, No. 11, §§ 1–10, *as amended,* 75 Pa.C.S. § 1701 *et seq.*

2. This Commission was composed of five commissioners appointed by the Governor and leaders of the General Assembly to review proposed regulations of executive agencies with a view toward evaluating their cost benefits, inflationary impact, and conformity to legislative intent. Subject to certain overriding powers of the Attorney General and the Governor, the Commission had the power to disapprove proposed regulations and bar their publication in the Pennsylvania Bulletin.

IRRC rejected the proposed regulations on August 16, 1984. Thereafter, the proposed regulations were revised in an attempt to meet the IRRC's concerns and resubmitted to the IRRC on September 1, 1984. On September 6, 1984, in a 3–2 vote the IRRC again rejected the proposed regulations. The Insurance Department then began working toward proposing and submitting revised regulations in time for the next scheduled meeting before the IRRC on September 20, 1984.

However, on September 7, 1984, appellee, Carol Jones, filed in Commonwealth Court a Complaint in Equity and Petition for Special Injunction, seeking a mandatory injunction directing PennDOT to collect the CAT Fund charges as part of the Department's motor vehicle registration and renewal fee collection program. The complaint also sought payment of appellee's costs and counsel fees. That same day President Judge Crumlish granted a temporary injunction requiring PennDOT to collect the charges. Thereafter, on September 12th and 18th, hearings were held on the merits of the injunction. Proceedings on appellee's complaint were consolidated with proceedings on a similar complaint filed on behalf of the Insurance Federation of Pennsylvania and certain insurance companies.

During this time the Insurance Department submitted an administrative order for publication of the rejected regulations in the Pennsylvania Bulletin, with a view toward obtaining a certification from the Governor that the regulations were required to meet an emergency, thereby making the regulations effective for up to 120 days while being reviewed by the General Assembly. This was permitted by the terms of the Regulatory Review Act,[3] 71 P.S. § 745.6(b). On September 26, 1984, Governor Thornburgh issued such an emergency certification. That same day, however,

The Regulatory Review Act of June 25, 1982, P.L. 633, No. 181, § 15, 71 P.S. § 745 to 745.14, expired on December 31, 1985.

3. Act of June 25, 1982, P.L. 633, No. 181, §§ 1–14, *as amended.* This Act expired effective December 31, 1985.

Judge Crumlish entered a preliminary injunction directing the Insurance Commissioner to designate PennDOT as the agent to collect the $5 fee, and to present regulations to the IRRC governing collection of the fee.

Appellants[4] took an appeal from that order to this Court. In a four-to-three vote we affirmed Judge Crumlish's direction that PennDOT temporarily collect the CAT fund charge,[5] and remanded the action to Commonwealth Court for final disposition on the merits.

While final hearing on the merits was still pending, the parties entered into a settlement agreement on December 7, 1984, which provided for collection of the CAT Fund charge by an independent, non-profit corporation. Because appellants disputed appellee's alleged right to attorney's fees the parties agreed that that issue would be decided later, upon appellee's application to the Commonwealth Court.

On January 18, 1985, appellee filed an application for counsel fees and costs. After a hearing on the matter Judge Colins of the Commonwealth Court issued an order awarding $37,887.50 as counsel fees, and $481.75 as costs and expenses to appellee's attorneys. These fees and costs were to be paid from the CAT Fund. Judge Colins based the entitlement to an award of counsel fees on his finding that the attorneys' efforts resulted in the implementation of a system for the funding of the CAT Fund. Characterizing these efforts as "creating" the fund, the court held that the attorneys were entitled to an award under the equitable, or "common" fund, doctrine.

4. Appellants consist of William Muir, Acting Insurance Commissioner of the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania, Insurance Department; Thomas D. Larson, Secretary of Transportation and the Pennsylvania Department of Transportation; and the Catastrophic Loss Trust Fund Board, by and through Johnathan F. Neipris, Acting Executive Director.

5. Justices Larsen, Flaherty, and Hutchinson dissented from that portion of our order directing PennDOT to collect the fee until final disposition of the matter in Commonwealth Court.

On appeal of the award to this Court[6] appellants raise various challenges to the lower court's order. Because of our resolution of the question of whether the equitable fund doctrine should apply to justify an award of attorney's fees in this case we need not address all of those challenges.[7]

The Judicial Code establishes allowable costs for the conduct of litigation:

The governing authority shall prescribe by general rule the standards governing the imposition and taxation of costs, including the items which constitute taxable costs, the litigants who shall bear such costs, and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters. All system and related personnel shall be bound by such general rules. In prescribing such general rules, the governing authority shall be guided by the following considerations, among others:

(1) *Attorney's fees are not an item of taxable costs except to the extent authorized by section 2503 (relating to right of participants to receive counsel fees).*

(2) The prevailing party should recover his costs from the unsuccessful litigant except where the:

(i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

(ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.

(iii) Application of the rule would work substantial injustice.

6. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended,* 42 Pa.C.S. § 723(a).

7. In addition to challenging the applicability of the equitable fund doctrine, appellants claim that an award of attorney's fees is precluded under 42 Pa.C.S. § 1726(2)(ii) because the underlying action involved a public question and the purpose of the litigation was to clarify the law. They also claim the award is barred under the doctrine of sovereign immunity.

(3) The imposition of actual costs or a multiple thereof may be used as a penalty for violation of general rules or rules of court.

(emphasis added) 42 Pa.C.S. § 1726.[8]

The authority for awarding attorney's fees is contained in Section 2503 of the Judicial Code, which provides in pertinent part:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> \* \* \* \* \* \*
>
> (8) Any participant who is awarded counsel fees out of a fund within the jurisdiction of the court pursuant to any general rule relating to an award of counsel fees from a fund within the jurisdiction of the court.

42 Pa.C.S. § 2503(8).[9] Although this Court has not established any explicit rule specifying the circumstances under which an award of attorney's fees from a fund is allowed,[10] we have long recognized the common fund doctrine. That doctrine, also known as the equitable fund doctrine, is an exception to the "American" rule that, in the absence of statute or contract, each party to adversary litigation is required to pay his own counsel fees.

In *Hempstead v. Meadville Theological School,* 286 Pa. 493, 134 A. 103 (1926), the doctrine was explained thusly:

> Where the services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses, including counsel fees in-

---

**8.** Act of July 9, 1976, P.L. 586, No. 142, § 2.

**9.** Act of July 9, 1976, P.L. 586, No. 142, § 2.

**10.** As is evident from the language of Section 1726 of the Judicial Code, 42 Pa.C.S. § 1726, this Court's power to prescribe under what circumstances an award of attorney's fees may be permitted is restricted by legislative enactment of the General Assembly—specifically Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503. This Court has, however, prescribed by general rule the factors to be considered in fixing the amount of attorney's fees to be awarded where the court is authorized to impose them. Pa.R.C.P. 1716.

curred. This is the case even though the protection given or the raising of a fund results from what may be properly termed adversary litigation.

*Id.,* 286 Pa. at 495–96, 134 A. at 103. We find this rule of law to be within the parameters set by Section 2503(8), and thus to have continued validity.

The "common fund" exception has traditionally been narrowly applied, and most often invoked where the attorney's efforts have protected or preserved an estate or fund from waste, dissipation or fraudulent claims. *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.,* 497 Pa. 102, 439 A.2d 621 (1981); *Estate of Tose,* 482 Pa. 212, 393 A.2d 629 (1978); *Weed's Estate,* 163 Pa. 595, 30 A. 272 (1894); *Manderson's Appeal,* 113 Pa. 631, 6 A. 893 (1886). The doctrine has also been applied where the services created a fund or augmented it by new assets. *Miller v. Myers,* 300 Pa. 192, 150 A. 588 (1930); *Shearer v. Moore,* 277 Pa.Super. 70, 419 A.2d 665 (1980). Compensation for the services is then recovered from the fund itself, thereby spreading the costs amongst the beneficiaries. *International Organization, supra.*

Appellee contends that her attorneys' efforts created the CAT Fund, since before the settlement was reached no system was in place to collect the charge, and the fund was penniless. She argues that the substantial benefits conferred by her attorneys' efforts on the class of persons not participating in the litigation entitled her to counsel fees.

■ The applicant for counsel fees has the burden of proving his/her entitlement thereto. *See In Re Fine Paper Antitrust Litigation,* 751 F.2d 562 (3rd Cir.1984). As noted above, the Commonwealth Court in this matter found that appellee's attorneys provided legal services which resulted in the implementation of a system for the funding of the CAT Fund. From this finding, the court concluded that these attorneys "created" the CAT Fund and were entitled to a reasonable fee for their services.

Although this Court is not at liberty to disturb the finding of the fact finder, absent an abuse of discretion or lack of supporting evidence, we are free and required to review the legal conclusions drawn from the facts as found.

■ Accepting the lower court's finding that this suit culminated in establishing a system for collecting the fund, we cannot accept the deduction that the method of collection was equal with the legislative creation of the fund itself.

The system proffered in this litigation was one of the options available to the Insurance Department; had this suit been less precipitous the very option suggested might have been considered. There was nothing creative, unique or innovative in appellee's system. It was one of several proposals, any one of which could have effectuated what was the ineluctable intention of the legislature. An act of creation remotely differs from its applications.

Indeed, the purpose of the litigation was not simply the implementation of a viable collection system, but the establishment of a collection system preferred by appellee and the Insurance Federation. Specifically, the plaintiffs in the consolidated actions wanted PennDOT to collect the charge as opposed to a system utilizing the insurance companies as the collection agents. It is important to note that at the time the action was commenced the fund was not even authorized to be in existence; that the Insurance Department was duly proceeding in establishing an acceptable method of collection; and that the only reason the Department's efforts had not achieved implementation of a collection system, as of the time appellee filed her complaint, was due to the objections of the IRRC. Under these circumstances the lower court's conclusion that implementation of a particular form of collection system created the fund was a novel and, we believe, unwarranted expansion of the meaning of "create" in the context of the common fund doctrine.

Clearly, appellee's efforts did not establish a claim of right to the CAT Fund charges; that claim was not "in jeopardy". *See Estate of Tose,* 482 Pa. 212, 393 A.2d 629 (1978). Liability for the charges was established by the Act, which also directed that the fund be established. Thus the fund was *created* by the Act. Nor did appellee demonstrate that her counsel's efforts preserved the assets of the fund; for there is no indication that the intervention of the court into this administrative decision-making process preserved endangered charges, augmented the amount of charges collected, or hastened the collection process. If anything, the court's intervention, necessitated by appellee's complaint, stymied the normal administrative procedures which were being pursued by the Insurance Department. At most, the effect of the litigation was to influence the management of the Insurance Department's statutory duties. However, there was no demonstrated effect on the financial integrity of the fund.

The facts of this case are analogous to those in *Hempstead v. Meadville Theological School, supra.* In that case, an equity action was brought by dissenting trustees to restrain the majority trustees of a theological school from transferring its institution and educational activities from its Pennsylvania location to Chicago, and to restrain the transfer of its property to an Illinois corporation. The litigation resulted in a decree restraining the transfer of the assets of the school, and prohibiting the trustees from managing and directing its strictly corporate business in any other place but Meadville, Pennsylvania. This Court reversed the lower court's award of counsel fees on the basis that the purpose and effect of the litigation was to control the managerial actions of the trustees, not to preserve the property or a fund, since the property would have been as safe in Illinois as in Pennsylvania.

Similarly, the purpose and effect of the instant litigation was merely to control the managerial acts of the Insurance Department. Whether the litigation preserved the assets of the CAT Fund was not the issue, since the purpose of the

litigation was not to insure the integrity of the fund but to obtain a preferred method of managing the collection, a collection which in some form was inevitable. Under such circumstances the award of attorney's fees was not justified under the common fund doctrine.

Our inquiry is not at an end. In support of her claim for fees, appellee alternatively relies on a theory extrapolated from the common fund doctrine, often referred to as the "common benefit" doctrine. This doctrine, which this Court has neither adopted nor expressly rejected, provides that attorney's fees may be awarded to individuals whose litigation has substantially benefitted a class of persons not participating in the litigation. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

One distinction of the "common benefit" doctrine is that it is not limited to cases involving a fund within the jurisdiction of the court. For instance, in *Hall, supra,* the theory was applied to justify an award of counsel fees assessed against a union found guilty of violating a member's right of free speech. In *Mills, supra,* the theory was similarly applied to assess fees against a corporation which had been sued by a shareholder. That suit had been brought to set aside a merger which had been induced through the use of a misleading proxy statement.

Another distinction of the "common benefit" doctrine is that it is limited to instances where the beneficiaries are small in number and easily identifiable. For example, in *Hall, supra,* the benefits accrued to members of the union who shared the expense of counsel fees through their union. In *Mills, supra,* the benefits accrued to the corporation and its shareholders who shared the expense through the corporation.[11]

11. Appellee also relies on *Pennsylvania Association of State Mental Hospital Physicians v. State Employees' Retirement Board,* 87 Pa. Cmwlth. 108, 483 A.2d 1003 (1984), in which the court justified an award of counsel fees from an interest reserve fund generated by the state employees retirement fund on the basis of common benefit principles. The fees were awarded for services rendered in a class

In *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the United States Supreme Court explained that the common benefit theory

ill suits litigation in which the purported benefits accrue to the general public. In this Court's common-fund and common-benefit decisions, the classes of beneficiaries were small in number and easily identifiable. The benefits could be traced with some accuracy, and there was reason for confidence that the costs could indeed by shifted with some exactitude to those benefiting.

*Id.* at 265, n. 39, 95 S.Ct. at 1625–26, n. 39. Consequently, in that case the Court was unwilling to extend the common benefit theory to justify an award of counsel fees to environmental interest groups who had initiated litigation to prevent the issuance of permits by the Secretary of the Interior for the construction of the trans-Alaska oil pipeline.

In the present case the purported benefits of appellees litigation were supposed to accrue to the general public.[12] Thus the circumstances here do not justify application of the common benefit theory.

In public interest litigation such as *Alyeska,* and, as we perceive it, the instant case, counsel fees are awarded, if at

action suit successfully challenging the Retirement Board's method of calculating "credited service" for all part-time employees participating in the retirement system. There is a difficult question as to whether the Pennsylvania judiciary is empowered to apply the common benefit doctrine as in *Pennsylvania Association* where there is no statutory authorization for such an award. The awarding of counsel fees is a matter controlled by statute in this Commonwealth. 42 Pa.C.S. § 2503. Subsection (8) of Section 2503 of the Judicial Code authorizes an award of counsel fees out of a fund "within the jurisdiction of the court." While this clearly authorizes awards based upon the traditional common fund doctrine, it does not appear to authorize awards in common benefit cases not involving a fund within the jurisdiction of the court such as *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) and *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

12. As we remarked above whether the instant litigation actually benefitted the general public is questionable since the general public would inevitably benefit by whomsoever or howsoever the funds were collected. We can expect that what must be done will be done.

all, under a "private attorney-general" theory. In *Alyeska,* the majority of the Court held that the circumstances under which attorney's fees were to be awarded was a matter for Congress to determine, if it so chose. *Id.* at 262, 95 S.Ct. at 1624. The Court viewed the common fund doctrine and the rules allowing attorney's fees for willful disobedience of a court order, and for acting in bad faith, as assertions of the inherent power in the court to allow attorney's fees in particular situations, unless forbidden by Congress. *Id.* at 257–59, 95 S.Ct. at 1621–22. However, the Court held that the private attorney-general theory did not derive from the same power. The power to award attorney's fees under that theory rests in Congress alone, and the courts are not free to pick and choose which vindications of the public interest warrant an award of attorney's fees. *Id.* at 269, 95 S.Ct. at 1627.

Similarly, we find that the power to authorize an award of attorney's fees for the vindication of public interests embodied in the enactments of the General Assembly rests exclusively in that body. The statute which enumerates the rights of litigants to attorney's fees, 42 Pa.C.S. § 2503, bears this out. Section 2503 first enumerates nine traditionally recognized bases for such awards, including the common fund doctrine. None of these nine authorize private attorney-general awards for vindication of public interests.

█ In the tenth and final subsection, Section 2503(10), permits an award of attorney's fees to "any other participant in such circumstances as may be specified by statute heretofore or hereinafter enacted." In accordance with this authorization, the General Assembly has specified by statute numerous circumstances in which a litigant may be awarded counsel fees. Many of these include actions to enforce public interests embodied in enactments of the General Assembly.[13] Since public interest litigation is not

**13.** Examples of such statutes include the following: appeals to the Environmental Hearing Board of issuance of industrial waste permits, 35 P.S. § 691.307; enforcement of certain provisions of the Building

548

one of the traditional, judicially created bases for an award of attorney's fees, and the General Assembly has chosen to govern the awarding of attorney's fees, we therefore conclude that the power to authorize awards of attorney's fees under the private attorney-general theory, rests exclusively in the General Assembly. Since there is no statutory basis for a private attorney-general award of attorney's fees under the circumstances of this case, no basis for an award of such fees is applicable.

Accordingly, the order of the Commonwealth Court is reversed, all parties to pay their own costs.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent, and in support thereof adopt the Commonwealth Court memorandum opinion filed in this case and authored by the Honorable James Gardner Colins.

The following is Judge Colins opinion:

No. 2659 C.D. 1984

IN THE COMMONWEALTH COURT OF
PENNSYLVANIA

May 13, 1985

MEMORANDUM OPINION BY COLINS, Judge.

The firm of Curran, Winning and Fioravanti, P.C., has applied for counsel fees, costs and expenses in connection with the representation of Carol Jones (petitioner) and the class of all owners, operators, and passengers of motor vehicles maintained and operated in Pennsylvania, and all pedestrians within Pennsylvania who brought suit against

Energy Conservation Act, 35 P.S. § 7201.315(a); enforcement of the Coal Refuse Disposal Control Act, 52 P.S. § 30.63; enforcement of the Bituminous Mine Subsidence and Land Conservation Act, 52 P.S. § 1406.13. Also, there are a number of statutes which permit awards of counsel fees for enforcement of private rights granted in the enactment to promote public interests declared by the General Assembly, e.g., Gasoline, Petroleum Products and Motor Vehicle Accessories Act, 73 P.S. § 202–1, *et seq.*, Feature Motion Picture Fair Business Practices Law, 73 P.S. § 203–1 *et seq.*

the Commonwealth of Pennsylvania, Insurance Department et al., (respondents) for their failure to establish a system for the funding of the Catastrophic Loss Trust Fund (CAT Fund).[1]

The "CAT Fund" was to become effective on October 1, 1984; however, as of September 7, 1984, the date petitioner filed a complaint and petition for special injunction, respondents had not established a system for the funding of the "CAT Fund".

On September 7, 1984, our Court issued a special injunction ordering The Pennsylvania Department of Transportation (PennDOT) to collect all fees necessary to implement the "CAT Fund" as a part of PennDOT's Motor Vehicle Registration and Renewal Fee Collection Program. At this time, the question of payment of costs and counsel fees was deferred pending final outcome of the case.

On December 7, 1984, the class action was settled pursuant to an agreement entered into by petitioner and respondents. The Settlement Agreement provided for the identification of the entities to collect the "CAT Fund" charge, the method of collection, and the relationship of the "CAT Fund" collection system to the PennDOT registration system. As a result of the efforts of petitioner's counsel, a system for the collection of the "CAT Fund" charge was created. Counsel for petitioner have spent 145.25 hours in connection with this action and are requesting a fee of One Hundred Fifty Dollars ($150.00) per hour, plus costs and expenses. Respondents' counsel are opposing the application for fees and costs contending that a rate of One Hundred Fifty Dollars ($150.00) per hour is too high and

1. The "CAT Fund" was established pursuant to Sections 1761–1769 of the Motor Vehicle Financial Responsibility Law, Act 11 of 1984, 75 Pa.C.S. §§ 1761–1769 and provides for funding for the payment of catastrophic loss benefits to seriously injured accident victims who incur medical expenses in excess of One Hundred Thousand Dollars ($100,000.00). Funding shall occur by levying an initial charge of Five Dollars ($5.00) upon all motor vehicles required to be registered. Furthermore, the Pennsylvania Insurance Department shall designate an insurance company or other party to collect the Five Dollar ($5.00) charge.

that the efforts of counsel did not create a fund but that the fund was created by the Legislature.

As a result of respondents' motion to compel discovery, this Court issued an order dated April 4, 1985, requiring petitioner's counsel to produce redacted copies of any bills. Petitioner's counsel produced a number of bills; however, on April 23, 1985, respondents filed a motion for sanctions due to the fact that petitioner's counsel did not produce all bills in which a rate of One Hundred Fifty Dollars ($150.00) per hour was charged.

On April 29, 1985, our Court held a hearing on this matter and heard arguments from both sides on whether petitioner's counsel is entitled to fees of One Hundred Fifty Dollars ($150.00) per hour plus costs to be extracted from the "CAT Fund".[2]

The following factors as set forth in Pa.R.C.P. No. 1716 are to be considered by a reviewing court in determining the amount of counsel fees to be awarded:

(1) the time and effort reasonably expended by the attorney in the litigation;

(2) the quality of the services rendered;

(3) the results achieved and benefits conferred upon the class or upon the public;

(4) the magnitude, complexity, and uniqueness of the litigation; and

(5) whether the receipt of a fee was contingent on success.

In addition, existing case law must be considered to determine if counsel fees and costs should be awarded in the instant matter. Where the efforts of an attorney create a fund for the benefit of others, the attorney is entitled to a reasonable fee to be extracted from that fund. *See Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct.

---

**2.** On April 29, 1985, our Court also issued an order denying respondents' Motion for Sanctions.

777, 83 L.Ed. 1184 (1939); *Estate of Tose,* 482 Pa. 212, 393 A.2d 629 (1978).

It is clear from the pleadings in this matter that petitioner's counsel created a fund that was not in existence prior to instituting the action. The suit was filed on September 7, 1984, and a fund was created within three months. Since the creation of the "CAT Fund" has a great salutary effect on the public, counsel is entitled to reasonable fees from the fund as a whole.

The rationale underlying the awarding of counsel fees from a fund created by an attorney for the benefit of others is to spread the costs of legal representation proportionately among those benefited by the suit. Otherwise, the persons who obtained the benefit of a lawsuit without contributing to its costs would be unjustly enriched at the successful litigant's expense.

In *Lindy Brothers Builders, Inc. of Philadelphia v. America Radiator and Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir.1973), the Third Circuit Court of Appeals discussed the awarding of counsel fees from a fund created for the benefit of others under the equitable fund doctrine and stated:

> There is, however, authority for the award of fees under the general equitable powers of the court (citations omitted). These equitable powers may, under the equitable fund doctrine, be used to compensate individuals whose actions in commencing, pursuing or settling litigation, even if taken solely in their own name and for their own interest, benefit a class of persons not participating in the litigation (citations omitted). *Id.* at 165.

It is axiomatic that the method of determining a fee for legal services provided on an hourly basis is to multiply the total number of hours expended by the reasonable hourly rate. The resulting figure is known as the "lodestar" fee, and a court can increase or decrease the lodestar fee in light of the contingencies involved and the quality of the work performed. *See In Re Anthracite Coal Antitrust Litigation,* 81 F.R.D. 499 (M.D.Pa.1979).

After carefully reviewing all of the pleadings and listening to arguments from both sides, we find that the 145.25 hours expended by petitioner's counsel on this matter were reasonable and necessary to the conduct of this litigation. In addition, as the findings above indicate, petitioner's counsel were able to negotiate a settlement efficiently and effectively due to the quality of work performed.[3] Petitioner's counsel substantially limited the time expended in an action of this complexity by being well-prepared, well-organized, and willing to settle the matter in a quick fashion for the best interests of the public.

With respect to the hourly rate charged by each attorney, this Court is of the view that the rate of One Hundred Fifty Dollars ($150.00) per hour charged by Robert E.J. Curran, Esq., is in accordance with prevailing rates charged by attorneys with similar backgrounds, education, and experience practicing in the locality of the attorneys working for the petitioning firm; however, the rate charged by Joseph M. Fioravanti, Esq., shall be reduced from One Hundred Fifty Dollars ($150.00) per hour to One Hundred Twenty-five Dollars ($125.00) per hour.

In determining whether the lodestar fee shall be increased by a requested multiplier of two, we must consider the following factors: (1) the magnitude, complexity, and novelty of the legal and factual issues involved; (2) absence of any prior governmental or similar action; (3) financial risk to petitioner's counsel; (4) the result obtained by petitioner's counsel for the class; (5) expertise of petitioner's counsel in the subject matter of the suit; (6) achievement of a substantial benefit for the class with a minimum investment of time; (7) the quality of work submitted to this Court; and (8) the professional methods of counsel which substantially expedited the case. *Municipal Authority of the Town of Bloomsburg v. Commonwealth of Pennsylvania*, 527 F.Supp. 982 (M.D.Pa.1981).

**3.** Settlement occurred within three (3) months after suit was instituted.

The multiplier of two requested by petitioner's counsel will be applied to the lodestar fee based on the contingent nature of the case, and the quality of the work performed and results obtained.

Petitioner's counsel have also requested reimbursement for costs and expenses. Those expenses were reasonably necessary for the conduct of this litigation and are reasonable in amount. Thus, they will be awarded.

### ORDER

AND NOW, this 13th day of May, 1985, the firm of Curran, Winning and Fioravanti, P.C., is awarded the sum of Thirty-seven Thousand Eight Hundred Eighty-seven Dollars, Fifty Cents ($37,887.50), as fees and Four Hundred Eighty-one Dollars, Seventy-five Cents ($481.75) as costs and expenses, for a total award of Thirty-eight Thousand Three Hundred Sixty-nine Dollars, Twenty-five Cents ($38,369.25), to be paid from the Catastrophic Loss Trust Fund.

Costs for the April 29, 1985 hearing are to be assessed upon respondent.

/s/ James Gardner Colins
JAMES GARDNER COLINS, JUDGE