562 A.2d 926

**CITY OF READING; Karen A. Miller, Mayor; and the Police Pension Fund Board of the City of Reading, Appellants,**

v.

**Catherine M. FELTMAN, Appellee.**

**CITY OF READING; Karen A. Miller, Mayor; and the Police Pension Fund Board of the City of Reading, Appellants,**

v.

**Mary Mae TEMPLIN et al., Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 7, 1989.

Decided July 26, 1989.

William M. Young, Jr., Francis B. Haas, Jr., McNees Wallace & Nurick, Harrisburg, and Jack A. Linton, Peter F. Cianci, City Solicitor's Office, Reading, for appellants.

Robert T. Miller, Stevens & Lee, Susan E.B. Frankowski, Leon Ehrlich, Ehrlich and Ehrlich, Reading, for appellees.

Before BARRY and PALLADINO (P.), JJ. and BARBIERI, Senior Judge.

PALLADINO, Judge.

The City of Reading (City), its mayor and its Police Pension Fund Board (Board) (collectively, Appellants) appeal from a decision of the Court of Common Pleas of Berks County denying their motion for post-trial relief.

The facts are not in dispute and they are as follows. In 1966, the City enacted Ordinance No. 49, which amended the City's Police Pension Fund Ordinance, originally enacted on December 15, 1926. The 1966 amendment increased from 1% to 3% the deduction from a member's gross salary

and also mandated an additional 1% deduction from the pay of "married male members." The 1966 amendment provided that the additional 1% deduction was to:

[P]rovide funds for pension benefits for widows of members of said organization (1) who have not retired before September 1, 1965, and who die on or after said date and (2) who retired on pension on or after September 1, 1965, and who die on or after said date, or if no widow survives or if she survives and subsequently dies or remarries, then for the child or children under the age of eighteen years of such male members, which pension shall be calculated at the rate of fifty per centum of the pension such male member was receiving or would have been receiving had he been retired at the time of his death.

On February 11, 1970, the City enacted Ordinance No. 10, again amending its Police Pension Fund Ordinance. The 1970 amendment provides, in pertinent part:

The widow of a member of the police force or a member who retires on pension who dies or if no widow survives or if she survives and subsequently dies or remarries, then the child or children under the age of eighteen years of a member of the police force or a member who retires on pension who dies on or after the effective date of this amendment, shall, during her lifetime or so long as she does not remarry in the case of a widow or until reaching the age of eighteen years in the case of a child or children, be entitled to receive the pension the member was receiving or would have been receiving had he been retired at the time of his death.

The present case began in 1981 when Appellees, plaintiffs below, who are survivors of members of the City's police force, filed a class action in mandamus claiming entitlement to pension benefits under the 1970 amendment. In addition, Appellees sought interest on unpaid pension benefits, punitive damages, counsel fees and costs. Subsequently, the parties entered into a stipulation of facts. Thereafter, Appellees filed a motion for summary judgment. The trial court, per Judge Saylor, granted the motion for summary

judgment as to certain Appellees. Judge Saylor determined that survivors of a police officer who retired *and* died between September 1, 1965 (the effective date of Ordinance No. 49) and February 11, 1970 (the effective date of Ordinance No. 10), were entitled to 50% of the pension the officer received or would have received. Judge Saylor also determined that survivors of a police officer who died after February 11, 1970, regardless of that officer's retirement date, were entitled to receive 100% of the pension the officer received or would have received. Based on the above interpretation, Judge Saylor granted summary judgment to 14 of the 19 Appellees in the class. The City appealed to this court and we quashed the appeal as interlocutory, reasoning that the trial court's order left undetermined the matters of counsel fees, costs and punitive damages, and failed to direct the City to carry out the provisions of the order. *City of Reading v. Templin,* 88 Pa.Commonwealth Ct. 267, 489 A.2d 272 (1985). Following remand, the trial court issued an order directing payment of pensions to certain Appellees, awarding the successful Appellees 6% interest on the unpaid pensions, and directing the Board to pay the Appellees' counsel fees and costs. Appellants' motion for post-trial relief was denied; they have appealed to this court.

Appellants raise four issues for review: (1) whether the trial court erred in its interpretation of Ordinance No. 10; (2) whether the trial court's interpretation of the City's Police Pension Fund Ordinances is in error because it results in a violation of Pa. Const. art. III, § 26; (3) whether the trial court erred in awarding interest on unpaid pension benefits; and (4) whether the trial court erred in directing the Board to pay the Appellees' counsel fees and costs. We shall address these issues in order.

■ Appellants first argue that the trial court erred in interpreting Ordinance No. 10, asserting that the Ordinance was intended to apply only to survivors of police officers who were in active service on the date of enactment (February 11, 1970). We disagree. The language of the Ordi-

nance is clear, and it makes the date of death the determinative date for purposes of the pension. The language of Ordinance No. 10 can be paraphrased as follows: Survivors of a member of the police force or a member who retires on pension who dies on or after the effective date of this amendment, shall be entitled to receive the pension the member was receiving or would have been receiving had he been retired at the time of his death. In contrast to Ordinance No. 10, the 1966 Ordinance, No. 49, specifically limited its applicability to survivors of members who both retired and died after its effective date. Without any limiting language, Ordinance No. 10's plain meaning is that survivors of a member who dies after the effective date of the Ordinance are entitled to that member's pension.[1] Accordingly, we affirm the trial court's interpretation of Ordinance No. 10.

■ Appellants next argue that the trial court's interpretation results in a violation of Article III, Section 26 of the Pennsylvania Constitution, which provides as follows:

No bill shall be passed giving any extra compensation to any public officer, servant, employe, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim against the Commonwealth without previous authority of law: Pro-

---

1. We note that Ordinance No. 10 tracks the language of the enabling legislation in Section 4303(c) of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended, added by* the Act of July 27, 1959, P.L. 569, *as amended,* 53 P.S. § 39303(c). Section 4303(c) provides as follows:

> (c) The spouse of a member of the police force or a member who retires on pension who dies or if no spouse survives or if such person survives and subsequently dies or remarries, then the child or children under the age of eighteen years of a member of the police force or a member who retires on pension who dies on or after the effective date of this amendment, shall, during his lifetime or so long as such person does not remarry in the case of a surviving spouse or until reaching the age of eighteen years in the case of a child or children, be entitled to receive a pension calculated at the rate of fifty per centum of the pension the member was receiving or would have been receiving had he been retired at the time of his death and may receive the pension the member was receiving or would have been receiving had he been retired at the time of his death.

vided, however, That nothing in this Constitution shall be construed to prohibit the General Assembly from authorizing the increase of retirement allowances or pensions of members of a retirement or pension system now in effect or hereafter legally constituted by the Commonwealth, its political subdivisions, agencies or instrumentalities, after the termination of the services of said member.

In order to understand Appellant's argument, we must set forth a chart of the class members, the dates of retirement and death of the pension fund members, and the amounts the Appellees receive under the trial court's interpretation:

| | Claimant | Date of Retirement | Date of Death | Pension Fund Board Percentage | Common Pleas Court Percentage |
|---|---|---|---|---|---|
| 1. | C. Williams | — | 07/28/56 | 0 | 0 |
| 2. | B. Damario | 12/31/55 | 03/24/61 | 0 | 0 |
| 3. | A. Richards | 12/31/59 | 01/06/62 | 0 | 0 |
| 4. | K. Schafer | — | 06/29/65 | 0 | 0 |
| 5. | E. Dorsey | 01/09/59 | 02/09/69 | 0 | 0 |
| 6. | I. Hill | 02/01/66 | 02/01/66 | 50 | 50 |
| 7. | D. McMullen | 11/27/67 | 11/27/67 | 50 | 50 |
| 8. | A. Seigfried | 08/19/69 | 08/19/69 | 50 | 50 |
| 9. | P. Kaucher | 02/01/66 | 02/05/71 | 50 | 100 |
| 10. | M. Harak | 07/01/68 | 02/24/70 | 50 | 100 |
| 11. | D. Wenger | 11/20/68 | 03/19/75 | 50 | 100 |
| 12. | M. Hartranft | 05/31/69 | 01/08/73 | 50 | 100 |
| 13. | M. Hagemen | 12/01/64 | 05/17/82 | 0 | 100 |
| 14. | M. Templin | 11/24/51 | 05/18/74 | 0 | 100 |
| 15. | M. Amoroso | 01/01/59 | 02/06/80 | 0 | 100 |
| 16. | M. Dentith | 04/30/60 | 02/14/70 | 0 | 100 |
| 17. | M. Althouse | 06/25/61 | 04/30/76 | 0 | 100 |
| 18. | E. Wade | 12/23/63 | 01/30/73 | 0 | 100 |
| 19. | C. Feltman | 02/27/64 | 07/14/79 | 0 | 100 |

Appellants argue, based on caselaw and a 1955 amendment to the Pennsylvania Constitution, that the trial court's construction of Ordinance No. 10 results in two violations of Article III, Section 26. First, Appellants argue that the trial court's interpretation of Ordinance No. 10 results in an unconstitutional grant of pension benefits to Appellees numbered 13 through 19. Second, Appellants argue that the trial court's interpretation of Ordinance No. 10 results

in an unconstitutional increase of pension benefits to Appellees numbered 9 through 12.[2] Appellants' argument, although cogently and articulately stated, is flawed because it is based on the assumption that Ordinance No. 10 increases or grants pension benefits. However, Ordinance No. 10 does not grant or increase pension benefits to *members*. Instead, it provides that survivors are to receive the pension which the member would have received. The amount of the pension is not changed by Ordinance No. 10, nor does the Ordinance grant pension benefits to *members*.

 Appellants next argue that the trial court erred in awarding Appellees interest on the unpaid pension benefits. An award of interest is in the nature of an award of damages. *City of Pittsburgh v. Pennsylvania Department of Transportation*, 490 Pa. 264, 268 n. 4, 416 A.2d 461, 463 n. 4 (1980); *Mauch v. Pittsburgh Pension Board*, 383 Pa. 448, 119 A.2d 193 (1956). Section 8303 of the Judicial Code, 42 Pa.C.S. § 8303, is directly relevant, and provides as follows: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." The trial court, relying on *Allegheny County Police Pension Fund v. Casey*, 476 Pa. 261, 382 A.2d 461 (1978), determined that an award of interest is permissible as an element of damages where a writ of mandamus directs the payment of a sum of money. In *Allegheny County*, the supreme court affirmed this court's award of interest pursuant to the Mandamus Act, Act of June 8, 1893, P.L. 345, *as amended*, formerly 12 P.S. § 1919, repealed by Section 2(a) of the Act of April 28, 1978, P.L. 202. We conclude that the trial court correctly ordered payment of interest, and, accordingly, we affirm the award of interest.

 Appellants next argue that the trial court erred in assessing counsel fees and costs against Appellants. As

---

2. Inasmuch as the Board and the trial court agree on the decision with regard to Appellees numbered 1 through 8, the trial court's order with regard to those Appellees is not in dispute.

noted by the trial court, the "American" rule is that, in the absence of statute or contract, each party pays its own counsel fees. *Jones v. Muir*, 511 Pa. 535, 515 A.2d 855 (1986). Pennsylvania has long recognized the common fund doctrine as an exception to the "American" rule. *Id.* In *Jones*, the supreme court held that the common fund doctrine is within the parameters of Section 2503(8) of the Judicial Code, 42 Pa.C.S. § 2503(8), which provides as follows:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . . . .

(8) Any participant who is awarded counsel fees out of a fund within the jurisdiction of the court pursuant to any general rule relating to an award of counsel fees from a fund within the jurisdiction of the court.

Accordingly, the common fund doctrine has continued viability. *Jones*, 511 Pa. at 542, 515 A.2d at 859.[3] However, the common fund doctrine does not apply to this case because there is no fund within the jurisdiction of the court, as required by Section 2503(8) of the Judicial Code, 42 Pa.C.S. § 2503(8). Accordingly, the trial court was not empowered to award counsel fees under the common fund doctrine.

■ However, the trial court also indicated that counsel fees could be awarded to Appellees under the common benefit doctrine. The common benefit doctrine is not limit-

3. In *Jones*, 511 Pa. at 541–42, 515 A.2d at 858, the supreme court provided the following explanation of the common fund doctrine:
 In *Hempstead v. Meadville Theological School*, 286 Pa. 493, 134 A. 103 (1926), the doctrine was explained thusly:
 Where the services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses, including counsel fees incurred. This is the case even though the protection given or the raising of a fund results from what may be properly termed adversary litigation.
 *Id.*, 286 Pa. at 495–96, 134 A. at 103.

ed to cases involving a fund within the jurisdiction of the court. *Jones.* In *Jones,* the supreme court questioned the validity of the common benefit doctrine in Pennsylvania, and directly questioned the authority of Pennsylvania courts to award counsel fees under the common benefit doctrine:

> [In] *Pennsylvania Association of State Mental Hospital Physicians v. State Employees' Retirement Board,* 87 Pa.Cmwlth. 108, 483 A.2d 1003 (1984), ... the court justified an award of counsel fees from an interest reserve fund generated by the state employees retirement fund on the basis of common benefit principles. The fees were awarded for services rendered in a class action suit successfully challenging the Retirement Board's method of calculating 'credited service' for all part-time employees participating in the retirement system. There is a difficult question as to whether the Pennsylvania judiciary is empowered to apply the common benefit doctrine as in *Pennsylvania Association* where there is no statutory authorization for such an award. The awarding of counsel fees is a matter controlled by statute in this Commonwealth. 42 Pa.C.S. § 2503. Subsection (8) of Section 2503 of the Judicial Code authorizes an award of counsel fees out of a fund 'within the jurisdiction of the court.' While this clearly authorizes awards based upon the traditional common fund doctrine, it does not appear to authorize awards in common benefit cases not involving a fund within the jurisdiction of the court ...

511 Pa. at 545–46 n. 11, 515 A.2d at 860–61 n. 11. Under these circumstances, we conclude that the trial court erred in awarding counsel fees.

Accordingly, the order of the trial court is affirmed insofar as it awards pension benefits together with interest to members of the class. The trial court order is reversed insofar as it awards counsel fees and costs.

## ORDER

AND NOW, July 26, 1989, the order of the Court of Common Pleas of Berks County in the above-captioned

matter is affirmed insofar as it awards pension benefits together with interest to certain members of the class and is reversed insofar as it awards counsel fees and costs.